# UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| DAVID GRITZ, individually on behalf of all others similarly situated, | Case no. |
| Plaintiffs, | |
| v. | **CLASS ACTION** |
| KEIM ENTERPRISES, INC., a Pennsylvania corporation, | **JURY DEMAND** |
| Defendant. | |

## CLASS ACTION COMPLAINT AND DEMAND FOR JURY TRIAL

This case addresses a disturbing trend whereby real estate companies such as Defendant Keim Enterprises, Inc. doing business as Century 21 Keim Realtors ("Century 21 Keim Realtors") (collectively "Defendant") directs their real estate agents to cold call consumers without consent to generate business by violating the Telephone Consumer Protection Act ("TCPA").  Plaintiff David Gritz ("Plaintiff Gritz" or "Gritz") brings this Class Action Complaint and Demand for Jury Trial against Defendant Century 21 Keim Realtors to stop them from directing their realtors to violate the TCPA by making unsolicited, pre-recorded and autodialed calls to consumers *without their consent*, and to obtain injunctive and monetary relief for all persons injured by the conduct of Century 21 Keim Realtors.  Plaintiff Gritz, for his Complaint, alleges as follows upon personal knowledge as to himself and his own acts and experiences, and, as to all other matters, upon information and belief, including investigation conducted by his attorneys.

## PARTIES

1.      Plaintiff David Gritz is a resident of Whitehall, Pennsylvania.

2.     Defendant Century 21 Keim Realtors is a Pennsylvania corporation with its headquarters located at 90 N Cedar Crest Blvd, Allentown, Pennsylvania 18104. Century 21 Keim Realtors conducts business throughout this District.

## JURISDICTION AND VENUE

3.     This Court has federal question subject matter jurisdiction over this action under 28 U.S.C. § 1331, as the action arises under the Telephone Consumer Protection Act, 47 U.S.C. §227.

4.     This Court has personal jurisdiction over the Defendant and venue is proper in this District under 28 U.S.C. § 1391(b) because Defendant is incorporated and headquartered in this District and directed the TCPA calls from and into this District.

### TCPA Background

5.     The TCPA makes it unlawful "to make any call (other than a call made for emergency purposes or made with the prior express consent of the called party) using an automatic telephone dialing system or an artificial or prerecorded voice…to any telephone number assigned to a…cellular telephone service." *See* 47 U.S.C. §227 (b)(1)(A)(iii).

6.     According to findings by the Federal Communication Commission ("FCC"), the agency Congress vested with authority to issue regulations implementing the TCPA, such calls are prohibited because, as Congress found, automated or prerecorded telephone calls are a greater nuisance and invasion of privacy than live solicitation calls, and such calls can be costly and inconvenient.

7.     While "prior express consent" is required for all automatied and prerecorded calls, in 2013, the FCC required "prior express written consent" for all such telemarketing calls to wireless numbers and residential lines. Specifically, it ordered that:

> [A] consumer's written consent to receive telemarketing robocalls must be signed and be
> sufficient to show that the consumer: (1) received "clear and conspicuous disclosure" of

the consequences of providing the requested consent, i.e. that the consumer will receive future calls that deliver prerecorded messages by or on behalf of a specific seller; and (2) having received this information, agrees unambiguously to receive such calls at a telephone number the consumer designates.[] In addition, the written agreement must be obtained "without requiring, directly or indirectly, that the agreement must be executed as a condition of purchasing any good or service.

*In the Matter of Rules and Regulations Implementing the Tel. Consumer Prot. Act of 1991*, 27 F.C.C. Rcd. 1830, 1844 (2012) (footnotes omitted).

8.      "Telemarketing" is defined as "the initiation of a telephone call or message for the purpose of encouraging the purchase or rental of, or investment in, property, goods, or services, which is transmitted to any person." 47 C.F.R §64.1200(f)(12).

9.      When Congress enacted the TCPA in 1991, it found that telemarketers called more than 18 million Americans every day. 105 Stat. 2394 at § 2(3).

10.      By 2003, due to more powerful autodialing technology, telemarketers were calling 104 million Americans every day,. In re Rules and Regulations Implementing the TCPA of 1991, 18 FCC Rcd. 14014, ¶¶ 2, 8 (2003).

11.      The problems Congress identified when it enacted the TCPA have only grown exponentially in recent years.

12.      Industry data shows that the number of robocalls made each month increased from 831 million in September 2015 to 4.7 billion in December 2018—a 466% increase in three years.

13.      According to online robocall tracking service "YouMail," 5.2 billion robocalls were placed in March 2019 alone, at a rate of 168.8 million per day. www.robocallindex.com (last visited Apr. 9, 2019).

14.      The FCC also has received an increasing number of complaints about unwanted calls, with 150,000 complaints in 2016, 185,000 complaints in 2017, and 232,000 complaints in 2018. FCC, Consumer Complaint Data Center, www.fcc.gov/consumer-help-center-data.

3

15.     "Robocalls and telemarketing calls are currently the number one source of consumer complaints at the FCC." Tom Wheeler, *Cutting off Robocalls* (July 22, 2016), statement of FCC chairman.[1]

16.     "The FTC receives more complains about unwanted calls than all other complaints combined." Staff of the Federal Trade Commission's Bureau of Consumer Protection, *In re Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991,* Notice of Proposed Rulemaking, CG Docket No. 02-278, at 2 (2016).[2]

17.     In recent years a troubling trend has escalated in the real estate industry whereby real estate companies such as Century 21 Keim Realtors are training and directing their real estate agents to purchase lists of consumer' phone numbers and to solicit their services by cold calling consumers on their cell phone without any form of consent.

18.     This trend has resulted in consumers being bombarded by unsolicited real estate prerecorded and/or autodialed solicitation calls and text messages without their consent in violation of the TCPA.

## INTRODUCTION TO CENTURY 21 KEIM REALTORS

19.     Century 21 Keim Realtors is one of Century 21's most prolific realtor companies producing 508 real estate transaction sides in 2018 alone. They have received the Centurion award in all five of the last five years for outstanding production within Century 21.

20.     Loren Keim is the broker and president of Century 21 Keim Realtors.

---

[1] https://www.fcc.gov/news-events/blog/2016/07/22/cutting-robocalls
[2] https://www.ftc.gov/system/files/documents/advocacy_documents/comment-staff-ftc-bureau-consumer-protection-federal-communications-commission-rules-regulations/160616robocallscomment.pdf

21.     Loren Keim has authored several books on real estate lead generation including

"Real Estate Prospecting: The Ultimate Resource Guide" and "Introduction to Listing and

Selling Commercial Real Estate."

22.     Loren Keim, as the owner and president of Century 21 Keim Realtors instructs his

agents to cold call. For example, in his book "Introduction to Listing and Selling Commercial

Real Estate" Keim states:[3]

> Far too many real estate agents enter the field of real estate believing they can wait for
> the phone to ring and earn an above average income if they only select a brokerage with
> great advertising.  Most new agents, as they venture into this endeavor, expect that the
> company will generate leads for them. While it is true that most good real estate
> organizations generate some customers from their advertising, marketing program, and
> reputation, you will not make a great living at any company waiting for the phone to
> ring.  That is the kiss of death in the real estate industry.
>
> Prospecting, however, is not simply picking up the phone and calling possible buyers,
> sellers, tenants and landlords.  To be effective, prospecting must be a consistent planned
> process.   Your goal is to create a steady flow of business into your pipeline that will
> result in an above average income.
> …
> My experience with speaking in front of and training thousands of real estate agents over
> the years has taught me that prospecting is the hardest part of any real estate career.  The
> number one reason that real estate agents fail in this industry is that they fail to schedule
> the time to find prospects."[4]
>
> **Shot-in-the-Dark Cold Calling**
>
> I realize the absolute most avoided activity in the real estate industry is cold
> calling.  However, if you don't have a large book of business currently, including lots of
> listings and a regular stream of buyers, investors and prospective tenants knocking down
> your door, you need to start building a career somewhere.  Select a few target markets
> and create a reason to call.  For example, your firm may have recently leased a vacant
> office space in an industrial park.  Ask the listing associate if they mind if you prospect
> that industrial park for other units to lease.  Then make a list of all the buildings around
> the firm's recent contract, and locate the owner's phone numbers. No, I didn't say locate
> the owner's mailing address.  Remember that most mail will be thrown out without being

---

[3] Keim, Loren. Introduction to Listing and Selling Commercial Real Estate (p. 178). Gideon
Publications. Kindle Edition.
[4] Keim, Loren. Introduction to Listing and Selling Commercial Real Estate (p. 179). Gideon
Publications. Kindle Edition.

opened.  In order to survive in this industry, you need to find business now.  Pick up the phone and start calling the owners or decision makers of the surrounding properties.[5]

One of the top agents in our firm started cold calling right out of the starting gate.  His first day in our Allentown office, he sat down and told me that he had four kids to feed.  He selected all the multi-family properties in one particular zip code and simply called them.  "Hi, Mr. Carrigan?  My name is Clark Kent.  I'm a real estate investor in the area.  I'm actually also an investment specialist at Century 21 Keim Commercial Real Estate.  I'm sorry to bother you, but I noticed you owned some property near mine.  I was wondering if you were considering adding to your portfolio by buying more properties, or if you were considering liquidating – selling off properties while the market is fairly hot?" This was a strong approach because many investors are either planning to add more properties to their portfolios or start selling off what they own.  Using this script, our associate was able to find both property buyers and property sellers with one set of phone calls.  This cold calling technique helped him to jump-start his career.[6]

23.     Keim continues on in his book describing detailed methods of lead generating for commercial real estate agents.

Some real estate trainers teach real estate agents to randomly pick up the phone and call people until they get an appointment.  A much smarter approach is to carefully select a target market that you feel is not being serviced, or where you may find a competitive advantage, and lay out a game plan to target that audience.  The game plan will include a method, or several methods, of contacting the target audience, a reason for your contact or something of value for the group you're prospecting, and a systematic way to follow up with that group.[7]

Identifying the likely prospects can be challenging, because unlike most residential property, commercial and investment real estate is often held in the name of an LLC, a Partnership, a trust or a corporation.  There are online pay-for-use tools available to help identify the "real" owners or the decision makers of corporations.  One of those online services is ProspectNow (prospectnow.com).[8] ProspectNow is an online database of millions of commercial property owners, has been able to combine property data with other databases in order to obtain the actual owner names and even the phone numbers of key decision makers in firms.

---

[5] Keim, Loren. Introduction to Listing and Selling Commercial Real Estate (p. 191). Gideon Publications. Kindle Edition.

[6] Keim, Loren. Introduction to Listing and Selling Commercial Real Estate (p. 192). Gideon Publications. Kindle Edition.

[7] Keim, Loren. Introduction to Listing and Selling Commercial Real Estate (p. 179). Gideon Publications. Kindle Edition.

[8] Keim, Loren. Introduction to Listing and Selling Commercial Real Estate (p. 189). Gideon Publications. Kindle Edition.

Once you identify the market you want to target, whether that is a geographic area, or a property type in a geographic area, you can pull a list of all the owners and either use ProspectNow's contact management software or enter the data into your own CRM program.[9]

24.     Keim has written other books on "prospecting" for real estate agents including

"Loren Keim's Expireds & FSBOs – Real Estate Prospecting for Immediate Results."


[10]

25.     Since 2009 Keim has been presenting "Loren Keim's Ultimate Real Estate

Prospecting Workshop" to his agents:

---

[9] Keim, Loren. Introduction to Listing and Selling Commercial Real Estate (p. 189). Gideon Publications. Kindle Edition.
[10] https://www.amazon.com/Real-Estate-Prospecting-Expired-Listings/dp/B01G65UQQU



Selected Clips from Loren Keim's Real Estate Prospecting Workshop          11

26.     As is shown above, Keim presented the "Ultimate Real Estate Prospecting

Workshop."[12]

27.     Keim begins the workshop by stating,

We're going to talk about building a foundation for your career. A platform that you're going to jump from to get your career to the next level because everything really starts with prospecting.[13]

So what is prospecting? Apparently, prospecting is a dirty word, at least that's what I hear from most realtors. But prospecting is a way to grow your personal business over time. You have to set-up a system to do that. And by the way, prospecting is not a shotgun approach. You don't blast something out there and expect something to work…[14]

 … **if you decide to target expired listings, that's great**. **But do it day after day after day.** You're not talking to the same expireds, but you're delivering your message and you're getting better and better and better at it. You're tweaking it and trying to make it work.[15] (emphasis added)

---

[11] https://youtu.be/fZineYCI_eE
[12] https://www.playbackc21.com/presenter/details/index/id/68940/
[13] https://youtu.be/fZineYCI_eE - 4 seconds into the video
[14] *Id.* – 5 minutes, 58 seconds
[15] *Id. – 7 minutes, 7 seconds*

28.     Keim provides the following graphic in his prospecting presentation about how to prospect successfully, which includes the importance of selecting a target market for the real estate agent to establish leads from:


16

**The Tejas Gosai Team of Century 21 Keim Realtors Places Prerecorded and Autodialed Calls Pursuant to the Direction Provided by Century 21 Keim Realtors**

29.     The Tejas Gosai Team is an individual team within Defendant Century 21 Keim Realtors.

30.     Tejas Gosai who is the team leader started working as a real estate agent in 2017 as part of Keim's individual team and by the following year Gosai established his own team – The Tejas Gosai Team within Defendant Century 21 Keim Realtors.[17]

---

[16] *Id. – 8 minutes, 22 seconds*

[17] https://lehighvalleyoffmarket.com/wp-content/uploads/WPL/66/att_Bethlehem3UNIT14cap33.5Knet.pdf

9

31.    Gosai describes himself as "starting off as a real estate agent with a list of phone numbers, a binder full of scripts and having invested in the best technology money could buy."[18]

32.    By his 100th day as an agent, Gosai stated that he had obtained $15 million in listings.[19]

33.    When Gosai wanted to establish his own team after being trained by Loren Keim, Gosai presented Keim with a 75-page business plan.



Tejas Gosai is with Kalief M. Robinson and Matt Loebsack at The Tejas Gosai Team.
November 6 · Bethlehem, PA · ●

Loren Keim and Tim Mahon are the smartest dudes in this business. They answer every call and genuinely guide us to implement best practices.

I showed up with a 75 page business plan in November 2017 and they are the reason The Tejas Gosai Team is where we are today.    [20]

34.    A significant part of Gosai's lead generation as part of Century 21 Keim Realtors consists of cold calling expired listings.

representation of exactly what and how we will execute the sale of their property," he explains. "Most unsuccessful listing attempts simply miss key marketing elements and attention to detail, specifically in the expired market. Our expired listing resume proves that after we rework the marketing and distribution channels, we can sell any property within 45 days, on average." Of course, Tejas' creative eye also plays a valuable role in the listing process, whether residential or commercial. Early on in his business, he invested in top tools, such as    [21]

35.    Gosai even posted a testimonial on his website of a client that he specifically solicited through calling an expired listing.[22]

36.    Gosai is very open about his marketing practice of lead generating through calling expired listings. Gosai featured a video on the Tejas Gosai Team Facebook page in which he

---

[18] https://www.issuewire.com/the-tejas-gosai-team-is-now-launching-three-new-real-estate-solution-based-companies-1623629010158404
[19] https://topagentmagazine.com/profiles//2019/03/TEJAS-GOSAI.pdf
[20] https://www.facebook.com/photo.php?fbid=10120714499094654&set=a.587417458634&type=3&theater
[21] Id.
[22] https://tejasgosaiteam.com/residential

discusses recent properties they had both sold individually. Every listing that is referenced in this video was based on an expired listing. Gosai states in the video, "People don't know how hard it is to hammer expired listings, or even just get a listing. We're spending thousands of dollars on every single piece of the process…"[23]

37.    Loren Keim was tagged in this video by Gosai, notifying him of the video.



38.    Gosai described his training of a new agent to his team on his Facebook page stating, "So, like everyone who starts on this team, Sarah was confined to my neighboring desk to begin her gauntlet-style training in how we compete in this market… and boy did she learn quickly. Her first ever expired listing sales was previously listed with 4 brokerages…"[24]

39.    In order to ensure that Gosai's team is active in pursuing leads, and to hold them accountable for their performance, Gosai has his agents meet weekly. The agents must produce a sheet displaying the number of calls/texts they sent out, how many appointments they booked and indicate whether the lead was generated through an expired listing or other option:

---

[23] 1 minute, 34 seconds into the above video
[24] https://feedback.facebook.com/tejasgosai/posts/10120763781322674?__tn__=C-R



**TCPA Legality of Pre-Recorded and Autodialed Calls/Texts**

40.      As explained by the Federal Communications Commission ("FCC") in its 2012 order, the TCPA requires "*prior express written consent* for all autodialed or prerecorded [solicitation] calls to wireless numbers and residential lines." *In the Matter of Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991*, CG No. 02-278, FCC 12-21, 27 FCC Rcd. 1830 ¶ 2 (Feb. 15, 2012).

41.      Yet in violation of this rule, Defendant Century 21 Keim Realtors fails to obtain any express written consent prior to placing autodialed and prerecorded calls to cellular telephone numbers such as those of Plaintiff.

---

[25] https://www.facebook.com/tejasgosai/videos/10120695141168094/

12

42.     Defendant Century 21 Keim Realtors are directing their realtors to place unsolicited calls to consumers using automated and pre-recorded technology on behalf of Defendant Century 21.

## PLAINTIFF GRITZ'S ALLEGATIONS

### Century 21 Realtors Called Plaintiff's Cellular Phone Number Using a Prerecorded Message and Sent a Text Message Using an Autodialer Without His Consent

43.     Between November 4, 2019 and November 8, 2019, Plaintiff received 3 unsolicited calls from Century 21 Keim Realtors agents. None of these calls were answered.

44.     On November 8, 2019 at 10:39 AM, Gritz received a pre-recorded call from a Century 21 Keim Realtors agent on his cell phone using phone number 484-209-6077 regarding a home-buying program.

45.     Plaintiff Gritz remained on the line to speak with an agent to find out why he was being called, but the call ended when the message was finished.

46.     Gritz received another call on November 9, 2019 from a Century 21 Keim Realtors agent using phone number 484-209-6077, but he was unable to answer the call.

47.     Gritz called 484-209-6077 back on November 9, 2019, but he reached the voicemail of the agent and hung up.

48.     Upon hearing the voicemail message, Gritz received an autodialed text message from Mark Brown, who identifies himself as being with LehighValleyInstantOffer.com, using phone number 484-209-6077:



49.     LehighValleyInstantOffer.com is associated with The Tejas Gosai Team that is

part of Century 21 Keim Realtors:

✓ ◀❓**Sister Companies - Tejas Gosai Team**
https://www.thetgteam.com › about › sister-companies ◀❓
**Lehigh Valley Instant Offer**. Your source for confidential listings. image31. Lehigh Valley Off
Market. The Lehigh Valley Off Market Network was commissioned, ...                    26

50.     LehighValleyInstantOffer.com is not active, as of December 14, 2019.

51.     LehighValleyInstantOffer.com was promoted by Lauren Jung, a Century 21 Keim

Realtors agent:

26
https://www.google.com/search?q=%22Lehigh+Valley+Instant+Offer%22&oq=%22Lehigh+Valley+Instant+Offer%22&aqs=chrome..69i57j0.5042j0j7&sourceid=chrome&ie=UTF-8



52.    Gritz believes the text message was autodialed due to the fact that he received the text when he called 484-209-6077 back. He also believes the text message was autodialed because the text states "More Info: bettervm.com/r/."

53.    Bettervm.com forwards directly to bettervoice.com, a business class phone system website.

54.    Among the features offered by BetterVoice is automatic SMS text message responses:

---

[27] https://www.youtube.com/channel/UCWIPnPzbea__ajsQ2kCwTOg
[28] https://www.issuewire.com/the-tejas-gosai-team-is-now-launching-three-new-real-estate-solution-based-companies-1623629010158404



55.     BetterVoice can be set-up so that when a real estate agent receives a call, BetterVoice instantly sends a text message to the person that called, as per what Plaintiff Gritz experienced:



56.     Plaintiff does not have a relationship with Century 21 Keim Realtors and has never provided them his cell phone number or consent to receive calls from them.

57.     The unauthorized telephone calls from Century 21 Keim Realtors harmed Plaintiff in the form of annoyance, nuisance, and invasion of privacy, and disturbed Gritz's use and

---

[29] https://www.bettervoice.com/
[30] https://vimeo.com/67466845

enjoyment of his cellular phone, in addition to the wear and tear on the phone's hardware (including the phone's battery) and the consumption of memory on the phone.

58.     Seeking redress for these injuries, Gritz, on behalf of himself and Classes of similarly situated individuals, brings suit under the Telephone Consumer Protection Act, 47 U.S.C. § 227, *et seq.*, which prohibits unsolicited pre-recorded calls and autodialed text messages to cellular phone numbers.

## CLASS ALLEGATIONS

### Class Treatment Is Appropriate for Plaintiff's TCPA Claims
### Arising From Calls Made by Century 21 Keim Realtors

59.     Plaintiff Gritz brings this action pursuant to Federal Rule of Civil Procedure 23(b)(2) and Rule 23(b)(3) on behalf of himself and all others similarly situated and seeks certification of the following two Classes:

> **Prerecorded No Consent Class:** All persons in the United States who, from four years prior to the filing of this action through the date of class certification, (1) one or more Century 21 Keim Realtors agents called (2) using a prerecorded voice message, and (3) for whom Defendant Century 21 Keim Realtors claims (a) they obtained prior express written consent in the same manner as Defendant Century 21 Keim Realtors claims they supposedly obtained prior express written consent to call Plaintiff Gritz, or (b) they did not obtain prior express written consent.

> **Autodialed No Consent Class:** All persons in the United States who, from four years prior to the filing of this action through the date of class certification, (1) one or more Century 21 Keim Realtors agents texted or called, (2) to the person's cellular telephone, (3) using dialing equipment substantially similar to the dialing equipment used to text or call Plaintiff, and (4) for whom Defendant Century 21 Keim Realtors claims (a) they obtained prior express written consent in the same manner as Defendant Century 21 Keim Realtors claims they supposedly obtained prior express written consent to call Plaintiff Gritz, or (b) they did not obtain prior express written consent.

60.     The following individuals are excluded from the Classes: (1) any Judge or Magistrate presiding over this action and members of their families; (2) Defendant, their subsidiaries, parents, successors, predecessors, and any entity in which either Defendant or its parents have a controlling interest and their current or former employees, officers and directors;

17

(3) Plaintiff's attorneys; (4) persons who properly execute and file a timely request for exclusion from the Classes; (5) the legal representatives, successors or assigns of any such excluded persons; and (6) persons whose claims against either Defendant have been fully and finally adjudicated and/or released. Plaintiff anticipates the need to amend the Class definitions following appropriate discovery.

61.   **Numerosity**: On information and belief, there are hundreds, if not thousands of members of the Classes such that joinder of all members is impracticable.

62.   **Commonality and Predominance**: There are many questions of law and fact common to the claims of Plaintiff and the Classes, and those questions predominate over any questions that may affect individual members of the Classes. Common questions for the Classes include, but are not necessarily limited to the following:

> (a)  whether Century 21 Keim Realtors agents called Plaintiff and members of the Prerecorded No Consent Class using a pre-recorded voice message;
>
> (b)  whether Century 21 Keim Realtors agents sent text messages to Plaintiff and member of the Autodialed No Consent Class using an autodialer;
>
> (c)  whether Century 21 Keim Realtors agents made these calls and texts without prior express written consent;
>
> (d)  whether Century 21 Keim Realtors is vicariously liable for their agents' calls and texts; and
>
> (e)  whether members of the Classes are entitled to treble damages based on the willfulness of Defendant's conduct.

63.   **Adequate Representation**: Plaintiff will fairly and adequately represent and protect the interests of the Classes, and has retained counsel competent and experienced in class actions. Plaintiff has no interests antagonistic to those of the Classes, and neither Defendant has defenses unique to Plaintiff. Plaintiff and his counsel are committed to vigorously prosecuting this action on behalf of the members of the Classes, and have the financial resources to do so. Neither Plaintiff nor his counsel have any interest adverse to the Classes.

18

64. **Appropriateness**: This class action is also appropriate for certification because the Defendant has acted or refused to act on grounds generally applicable to the Classes and as a whole, thereby requiring the Court's imposition of uniform relief to ensure compatible standards of conduct toward the members of the Classes and making final class-wide injunctive relief appropriate. Defendant's business practices apply to and affect the members of the Classes uniformly, and Plaintiff's challenge of those practices hinges on Defendant's conduct with respect to the Classes as wholes, not on facts or law applicable only to Plaintiff. Additionally, the damages suffered by individual members of the Classes will likely be small relative to the burden and expense of individual prosecution of the complex litigation necessitated by Defendant's actions. Thus, it would be virtually impossible for the members of the Classes to obtain effective relief from Defendant's misconduct on an individual basis. A class action provides the benefits of single adjudication, economies of scale, and comprehensive supervision by a single court.

**FIRST CAUSE OF ACTION**
**Telephone Consumer Protection Act**
**(Violation of 47 U.S.C. § 227)**
**(On Behalf of Plaintiff Gritz and the Prerecorded No Consent Class)**

65. Plaintiff Gritz repeats and realleges paragraphs 1 through 64 of this Complaint and incorporates them by reference.

66. Defendant Century 21 Keim Realtors realtors transmitted unwanted solicitation telephone calls to Plaintiff Gritz and the other members of the Prerecorded No Consent Class using a prerecorded voice message.

67. These prerecorded voice calls were made *en masse* without the prior express written consent of Plaintiff Gritz and the other members of the Prerecorded No Consent Class.

19

68.     These prerecorded calls were directed, apparently authorized, and/or ratified by Century 21 Keim Realtors.

69.     Defendant Century 21 Keim Realtors have, therefore, violated 47 U.S.C. §§ 227(b)(1)(A)(iii), (b)(1)(B). As a result of Defendant's conduct, Plaintiff Gritz and the other members of the Prerecorded No Consent Class are each entitled to a minimum of $500 in damages, and up to $1,500 in damages, for each violation.

## SECOND CAUSE OF ACTION
### Telephone Consumer Protection Act
### (Violations of 47 U.S.C. § 227)
### (On Behalf of Plaintiff Gritz and the Autodialed No Consent Class)

70.     Plaintiff repeats and realleges paragraphs 1 through 64 of this Complaint and incorporates them by reference herein.

71.     Century 21 Keim Realtors realtors sent unwanted solicitation text messages to Plaintiff and the other members of the Autodialed No Consent Class on behalf of Century 21 using equipment that, upon information and belief, had the capacity to store or produce telephone numbers to be called, using a random or sequential number generator.

72.     These solicitation telephone calls were made *en masse* without the consent of the Plaintiff and the other members of the Autodialed No Consent Class.

73.     These texts were directed, apparently authorized, and/or ratified by Century 21 Keim Realtors.

74.     Defendant Century 21 Keim Realtors has, therefore, violated 47 U.S.C. § 227(b)(1)(A)(iii). As a result of Defendant's conduct, Plaintiff and the other members of the Autodialed No Consent Class are each entitled to a minimum of $500 in damages, and up to $1,500 in damages, for each violation.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff Gritz, individually and on behalf of the Classes, prays for the

following relief:

    a.  An order certifying the Classes as defined above; appointing Plaintiff as the representative of the Classes; and appointing his attorneys as Class Counsel;

    b.  An award of actual and/or statutory damages for the benefit of Plaintiff and the Classes, and costs;

    c.  An order declaring that Defendant's actions, as set out above, violate the TCPA;

    d.  An injunction requiring the Defendant to cease all unsolicited calling activity, to implement sufficient TCPA related policies and procedures, and to otherwise protect the interests of the Classes; and

    e.  Such further and other relief as the Court deems just and proper.

## JURY DEMAND

Plaintiff requests a jury trial.

Respectfully Submitted,

**DAVID GRITZ**, individually and on behalf of those similarly situated individuals

Dated: April 2, 2020

*/s/ Andrew M. Carroll*
Andrew M Carroll
Law Office of Andrew M. Carroll
1800 JFK Blvd, Suite 300
Philadelphia, PA 19103
Telephone: (609) 400-1302
Email: andrewcarrollesq@gmail.com

Stefan Coleman*
law@stefancoleman.com
LAW OFFICES OF STEFAN COLEMAN, P.A.
1072 Madison Ave, Suite 1
Lakewood, NJ 08701
Telephone: (877) 333-9427
Facsimile: (888) 498-8946

Avi R. Kaufman*
kaufman@kaufmanpa.com
KAUFMAN P.A.
400 NW 26th Street

Miami, FL 33127
Telephone: (305) 469-5881

*Attorneys for Plaintiff and the putative Classes*

*\*Pro Hac Vice*